UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ROBERT WHITMORE, III,<br>                  Plaintiff,<br><br>              -vs-<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security;<br>                  Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No.: 4:20-cv-0 788-TER<br><br><br><br>**ORDER** |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits(DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned by voluntary consent pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

### A.  Procedural History

Plaintiff filed an application for DIB on April 24, 2018, alleging inability to work since March 15, 2018. (Tr. 39). His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held on March 28, 2019, at which time Plaintiff, represented, testified. (Tr. 39). The Administrative Law Judge (ALJ) issued an unfavorable decision on May 13, 2019, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 39-50). Plaintiff submitted additional evidence to the Appeals Council. Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on January 7, 2020, making the ALJ's decision the Commissioner's final decision:

You submitted medical evidence from Lexington Brain and Spine Institute dated June 30, 2017 (1 page). This evidence is not new because it is a copy of Exhibit B2F, page 11. We did not exhibit this evidence.

You also submitted medical evidence from Newberry County Memorial Hospital and Lexington Medical Center dated November 25, 2013 through May 28, 2016 (5 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.

You submitted medical evidence from Midlands Internal Medicine dated December 10, 2019 through December 22, 2019 (11 pages) and Lexington Medical Center dated June 14, 2019 (3 pages). The Administrative Law Judge decided your case through May 13, 2019. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before May 13, 2019.

If you want us to consider whether you were disabled after May 13, 2019, you need to apply again. If you file a new claim for disability insurance benefits within 6 months after you receive this letter, we can use May 17, 2019, the date of your request for review, as the date of your new claim. The date you file a new claim can make a difference in the amount of benefits we can pay.

You have the right to file a new application at any time, but filing a new application is not the same as filing a civil action. If you disagree with our action and file a new application instead of filing a civil action, you might lose some benefits or not qualify for any benefits. So, if you disagree with our action, you should file a civil action within 60 days as described below.

(Tr. 1-3). Plaintiff filed this action *pro se* on February 20, 2020. Plaintiff thereafter sent numerous medical records to the court, totaling over 350 pages. *See* ECF Nos. 1, 7, 11, 23, 28, 30, 31, 32, 36, 37, 39, 41, 46-1.

**B.     Plaintiff's Background and Medical History**

Plaintiff was born on September 28, 1970, and was forty-seven years old on the alleged onset date. (Tr. 48). Plaintiff had at least a high school education and had past relevant work as a driver helper, construction worker, sander operator, and skin-peeling operator. (Tr. 48). Plaintiff alleges disability initially due to right hand carpal tunnel, stomach/hernia surgery, and spine problems. (Tr.

98).

C.  **The ALJ's Decision**

In the decision of May 13, 2019, the ALJ made the following findings of fact and conclusions of law (Tr. 39-50):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since March 15, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the cervical spine, status post fusion; bilateral carpal tunnel syndrome; right ulnar neuropathy; and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except that he can perform only occasional climbing of ramps or stairs and can never climb ladders, ropes, or scaffolds. He can perform only occasional balancing, stooping, kneeling, crouching, and crawling. He can perform no more than occasional overhead reaching with the right upper extremity. He can perform no more than frequent reaching in all other directions with the right upper extremity. He can perform no more than frequent fingering bilaterally.

6. The claimant is capable of performing past relevant work as a skin-peeling Operator (DOT# 525.685-030 (SVP 2)). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2018, through the date of this decision (20 CFR 404.1520(f)).

## II. DISCUSSION

Plaintiff generally raises issues regarding surgery in 2016(two years before the alleged onset date), diarrhea, and that in 2020 a different doctor wrote what was wrong with him. (ECF No. 37 at 1). Plaintiff alleges generally he also has difficulty with his hands and spine. (ECF No. 37). In response to Defendants' brief, Plaintiff alleges he has been working in pain since 2013 and needed surgery then but was made to wait until 2020. To the reply brief, Plaintiff attached a note from Dr. Rashti dated 8/17/20. (ECF No. 41-1). Of note, Dr. Rashti makes no opinion as to if the statement applies retroactively in time or how far backwards his statement goes in time; Dr. Rashti appears to state it is Plaintiff's current condition in August 2020. (ECF No. 41-1). Other records from 2016, 2017, 2020, and December 10, 2019, are also attached to the reply brief. (ECF No. 41-1).

The relevant time period before the ALJ and before this court is March 15, 2018 through May 13, 2019.

Defendant argues Plaintiff worked extensively after his surgeries and the record contains few reports of diarrhea with providers responding that he needed to focus on improving his diet. Defendant also argues the remedy for Plaintiff's current gastrointestinal issues is to apply again for benefits. (ECF No. 40). Defendant argues the ALJ fully evaluated Plaintiff's spine allegations.

**A.    LEGAL FRAMEWORK**

    **1.    The Commissioner's Determination–of–Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.     **The Court's Standard of Review**

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**B.     ANALYSIS**

Plaintiff generally raises issues regarding surgery in 2016, diarrhea, and that in 2020 a different doctor wrote what was wrong with him. (ECF No. 37). Plaintiff alleges generally he also has difficulty with his hands and spine. (ECF No. 37). "My hands flare up when I am working and my spine surgery is bothering me." (ECF No. 37). Plaintiff alleges Amazon fired him in March 2018 for going to the restroom. (ECF No. 37). In response to Defendants' brief, Plaintiff alleges he has been working in pain since 2013 and needed surgery then but was made to wait until 2020. Plaintiff alleges it took Plaintiff awhile to learn the computer at Amazon. Plaintiff alleges his symptoms all started after his 2016 surgery. (ECF No. 41).

To the reply brief, Plaintiff attached a note from Dr. Rashti dated 8/17/20: "He has had an extensive workup and a couple of procedures performed by myself. He has been having difficulty

with diarrhea and this has affected his job and social interactions. He will continue to follow up in my office to help identify the etiology and help improve/resolve this problematic medical concern, but his condition has continued and he still has had difficulty maintaining a job because of this problem." (ECF No. 41-1). Of note, Dr. Rashti makes no opinion as to if the statement goes backwards in time or how far backwards his statement applies; the statement appears to state it is Plaintiff's current condition in August 2020. (ECF No. 41-1). Other records from 2016, 2017, 2020, and December 10, 2019, are also attached to the reply brief. (ECF No. 41-1).

The relevant time period before the ALJ and before this court is March 15, 2018 through May 13, 2019.

Defendant argues Plaintiff worked after his 2016 surgeries that Plaintiff asserts are when his problems began and the record contains few reports of diarrhea with providers responding that he needed to focus on improving his diet. Defendant also argues the remedy for Plaintiff's current gastrointestinal issues is to apply again for benefits. (ECF No. 40). Defendant argues the ALJ fully evaluated Plaintiff's spine allegations.

**Records Submitted to the Court**

The evidence submitted to the court is outside the relevant time period before the ALJ, which was March 15, 2018 through May 13, 2019. Pursuant to the sixth sentence of 42 U.S.C. § 405(g), a court may remand on the basis of additional evidence not presented to the agency "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Plaintiff makes no specific arguments as to these requirements. These records are not material as they predate or post-date the relevant time period before the ALJ. The same is true of Dr. Rashti's statement after

the relevant time period regarding Plaintiff's current state; moreover, Dr. Rashti's statement does not provide any specific functional limitations. Well after the Plaintiff brief submission deadline, Plaintiff sent a one page medical form from Premier Disability Services, LLC from Dr. Bkattackarsee dated March 2021, which stated Plaintiff was unable to work due to continuous recurrent diarrhea and was unable to use hands due to neuropathy. (ECF No. 46-1). It also stated Plaintiff's impairments were expected to last at least 12 months and gave no indication of any retroactivity. (ECF No. 46-1). To be considered "material," additional evidence must relate to the relevant period. 20 C.F.R. § 404.970(a)(5). Moreover, there is nothing in these records to explicitly link the later evidence. If Plaintiff believes his condition has changed since the May 2019 decision, the appropriate remedy is to file a new application. *See* 20 CFR § 404.620(a)(2). Such records do not provide a basis for remand.

Hands/Upper Extremity/Spine

The ALJ found degenerative disc disease of the cervical spine, status post fusion as one of Plaintiff's severe impairments. (Tr. 41). Other back issues were found to be non-severe:

> I have considered the claimant's testimony and statements that he has problems with lower back pain, which affects his ability to bend and stoop (Exhibit B3E p. 2). However, the claimant's results on lumbar x-ray were normal in most respects in November 2017. He had small marginal osteophytes off the superior endplates of L4 and L5. Other than that, his lumbar spine had normal alignment and curvature, with no evidence of fracture. The disc spaces were well maintained and the facets were within normal limits (Exhibit B4F p. 37). Physical examinations of the claimant's lumbar spine and musculoskeletal system have been normal (Exhibit B8F p. 4; Exhibit B12F p. 5; Exhibit B14F p. 2). Based on this evidence, I find that the claimant does not have a medically determinable impairment of the lumbar spine. In the alternative, considering the very limited findings on x-ray and the lack of a diagnosis, I find that the claimant's lower back problems are not a severe impairment for purposes of this decision. His lower back problems are fully accommodated by the exertional and postural restrictions given below.

(Tr. 42). The ALJ also found Plaintiff did not exhibit the clinical signs to meet the spinal disorder Listing 1.04, noting that Plaintiff had normal findings on physical examination during post-surgery primary care visits, despite complaints of persistent neck pain, citing Exhibit B8F pp. 4 and 8. (Tr. 43).

The ALJ found bilateral carpal tunnel syndrome and right ulnar neuropathy as two of Plaintiff's severe impairments. (Tr. 41). "His most recent NCV/EMG findings showed no evidence of CTS on the right, but did show mild-to-moderate ulnar neuropathy at the right elbow (Exhibit B2F)." (Tr. 43). "The claimant experienced improvements in pain and upper extremity weakness following the surgery on his cervical spine (Exhibit B3F pp. 41-42). He had normal findings on physical examination at his neurosurgery clinic in January 2018 (Exhibit B7F p. 5)." (Tr. 43). "He testified to problems with burning and tingling in his bilateral upper extremities. However, he did not say that he was incapable of using his upper extremities for purposes of completing basic daily activities. I conclude, therefore, that the claimant does not meet the criteria of Listing 1.02." (Tr. 43).

The ALJ considered Plaintiff's testimony that he had pain in his hands and right arm when returning to work. Plaintiff reported he had trouble reaching overhead on the right and picking up small or large objects over the workday. Plaintiff used Bengay and muscle rub at home for hand pain relief. (Tr. 44). Plaintiff reported tingling and burning in his wrists, hands, and fingers. (Tr. 44). The ALJ considered Plaintiff's testimony of pain in his neck and lower back that worsens with turning his head and that he cannot stand for long periods. Plaintiff returned to work after cervical surgery prior to the alleged onset date. (Tr. 44)

Prior to the onset date, Plaintiff was seen for his complaints. (Tr. 44-45). Plaintiff had

surgery in September 2017. (Tr. 44-45). "His issues with tingling in his upper extremities had improved since the operation on his cervical spine in September 2017." (Tr. 45). Plaintiff completed physical therapy prior to the alleged onset date and reported in December 2017 he was doing alright and his neck was coming along. (Tr. 46).

Plaintiff was assaulted on December 22, 2017, and Plaintiff's neurosurgeon prescribed additional physical therapy. Plaintiff had 5/5 strength, stable gait, normal range of motion with normal imaging. (Tr. 46).

On March 28, 2018, Plaintiff was seen by primary care for neck pain. Short term NSAID use and a neck roll was recommended. Plaintiff was to wear splints at night for carpal tunnel. Plaintiff was instructed to follow up with his surgeon, but the record appears he did not. (Tr. 46). Plaintiff reported continued neck pain. Splints provided relief for carpal tunnel. (Tr. 46). In January 2019, Plaintiff was seen in the emergency room for a fall and spine imaging showed stable fusion. Plaintiff's final primary care visit before the ALJ's decision was in March 2019. Plaintiff did not complain regarding his neck or upper extremities at that visit. (Tr. 46).

The ALJ found the evidence of record was not fully consistent with Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms. (Tr. 47). Plaintiff did not follow up with a surgeon since January 2018 in regards to his neck and physical signs of neck or upper extremity symptoms were absent. (Tr. 47). Plaintiff was not given anything stronger than NSAIDs for pain in primary care visits in 2018. Imaging in January 2019 showed stable fusion; Plaintiff did not complain about his neck or upper extremities in March 2019. (Tr. 47). In April 2018, use of splints at night provided relief from carpal tunnel symptoms. Plaintiff did not take medication for neuropathic pain. (Tr. 47). The ALJ explained how she provided some

accommodations in the RFC determination:

> Due to the condition of his cervical spine, he is limited to only occasional climbing of ramps or stairs and only occasional balancing, stooping, kneeling, crouching, and crawling. The claimant testified that he had ongoing problems with neck pain, which radiated into his right upper extremity. Therefore, he can perform no more than occasional overhead reaching and no more than frequent reaching in all other directions with the right upper extremity. Due to carpal tunnel syndrome and/or ulnar neuropathy, the claimant can perform no more than frequent fingering bilaterally

(Tr. 47). On exam in January 2018, Plaintiff had normal ambulation, intact coordination, and 5/5 upper extremity strength. (Tr. 47). The ALJ only found non-examining opinions to be partially persuasive in that they found a reduced medium RFC and the ALJ found additional postural limitations and a light RFC and limited reaching down to no more than occasional reaching overhead on the right. (Tr. 48).

Gastrointestinal

> The ALJ found Plaintiff's history of hernia surgery as a non-severe impairment:

> The claimant underwent hernia repair surgery in June 2016. At the time of surgery, he was having pain from his hernia with physical exertion and lifting (Exhibit B11F). The claimant has since reported potentially related issues with diarrhea, abdominal pain, and urinary frequency or incontinence in primary care visits (Exhibit B12F p. 6; Exhibit B14F pp. 2-3). He testified to these problems during the hearing, saying that he had needed to go to bathroom frequently while he was still working. At this point, there is no evidence of a recurrent hernia. There is also no diagnostic evidence of a serious gastrointestinal or urinary tract problem. Treatment has been conservative so far, focusing on the claimant's admittedly poor diet and lack of fiber. The possibility of a referral to a GI specialist was considered, but has not yet occurred (Exhibit B12F p. 6). Given this evidence, I find the claimant's hernia-related symptoms to be non-severe.

(Tr. 41-42). As to Plaintiff's report of diarrhea in April 2018, Plaintiff's provider stated Plaintiff had a diet that contained no fruits and no vegetables. Plaintiff was educated on a fiber rich diet and probiotics. (Tr. 575). Plaintiff was to be seen again in May 2018; there is no record of Plaintiff

attending the visit. (Tr. 575). Plaintiff's final primary care visit before the ALJ was in March 2019 and Plaintiff complained of stomach pain, citing Exhibit B14F. (Tr. 46). Plaintiff stated at the visit establishing care that he was there for "disability" and brought a bag of medical records. (Tr. 593). Upon exam, Plaintiff had mild upper quadrant tenderness. (Tr. 593). Plaintiff was advised he needed to follow up with a disability doctor for evaluation of disability. (Tr. 594). Further, Defendant notes that while Plaintiff testified he stopped working because of diarrhea, he separately told the SSA that Amazon fired him because he had problems working with computers. (Tr. 100). At the Step Five finding, the ALJ noted questions asked to the VE by Plaintiff's attorney and the ALJ noted "again the claimant's limited and conservative treatment for issues with diarrhea and/or urinary incontinence/frequency." (Tr. 49).

The ALJ addressed Plaintiff's records and impairments in accordance with the applicable, law, regulations, and policies. The ALJ's findings as to impairments, subjective symptom evaluation, opinions, RFC, and Step Five vocational considerations are all supported by substantial evidence. There is no merit to Plaintiff's general arguments. Substantial evidence supports the ALJ's findings at each Step supporting the ultimate finding of no disability. Again, it is noted Plaintiff is free to file a new application for his current medical concerns pursuant to 20 CFR § 404.620(a)(2).

### III. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this

Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

|  |  |
|---|---|
| April 15, 2021<br>Florence, South Carolina | s/ Thomas E. Rogers, III<br>Thomas E. Rogers, III<br>United States Magistrate Judge |

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.